<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| THE PLASTIC SURGERY CENTER, P.A., <br><br> Plaintiff, <br><br> v. <br><br> CIGNA HEALTH AND LIFE INSURANCE COMPANY, *et al.*, <br><br> Defendants. | Civil Action No. 24-10227 (GC) (JTQ) <br><br> <u>**MEMORANDUM OPINION**</u> |

<u>**CASTNER, District Judge**</u>

**THIS MATTER** comes before the Court upon Defendant Cigna Health and Life Insurance Company's Motion to Dismiss Plaintiff The Plastic Surgery Center, P.A.'s Complaint (ECF No. 1-1) pursuant to Federal Rule of Civil Procedure (Rule) 12(b)(6). (ECF No. 10.) Plaintiff opposed, and Defendant replied. (ECF Nos. 13, 14.) The Court has carefully reviewed the parties' submissions and decides the matter without oral argument pursuant to Rule 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, and for other good cause shown, Defendant's Motion is **DENIED**.

**I.   BACKGROUND**

   **A.   Factual Background**

Plaintiff The Plastic Surgery Center, P.A. (TPSC) is a New Jersey corporation that specializes in performing plastic and reconstructive surgery. (ECF No. 1-1 ¶¶ 1, 4.) Defendant Cigna Health and Life Insurance Company (Cigna) is a Connecticut health insurance company with offices in Philadelphia, Pennsylvania, that "acted as an authorized agent and administrator" of member O.H.'s medical benefits plan (Patient's Plan). (*Id.* ¶ 2; ECF No. 1 ¶ 18.) O.H. (Patient)

sought specialized surgery (Surgical Procedure) from Plaintiff, but Plaintiff was not a participating provider under the Patient's Plan; Plaintiff was "out-of-network." (ECF No. 1-1 ¶¶ 5-10.) Plaintiff alleges that although the Patient's Plan provided benefits to out-of-network providers like Plaintiff, "the rate of compensation pursuant to those benefits" did not justify the surgeon's performance. (*Id.* ¶¶ 11, 20.) As such, Plaintiff "refused to perform the Surgical Procedure based on the terms of the Plan" and rather "sought to enter into an agreement with Cigna wherein TPSC would perform the Surgical Procedure in exchange for an agreed-upon rate of compensation." (*Id.* ¶¶ 12, 13.)

On or around May 27, 2020, Plaintiff alleges it contacted Defendant and "offered to perform the Surgical Procedure in exchange for the 'in-network rate.'" (*Id.* ¶ 15.) On or around June 8, 2020, Plaintiff alleges Plaintiff and Defendant "entered into a single case rate agreement . . . wherein TPSC would be paid the in-network rate for certain preapproved CPT Codes that were applicable to the performance of the Surgical Procedure." (*Id.* ¶ 16.) Defendant purportedly agreed in advance to pay in-network rates for certain codes, but it was "[r]easonably implied in the Agreement" that other CPT Codes may be needed for the surgeon to perform a "competent" Surgical Procedure. (*Id.* ¶ 18.) Plaintiff also alleges that, as part of the agreement, Plaintiff forfeited its right to "balance bill" the Patient. (*Id.* ¶ 17.) Accordingly, Plaintiff alleges its agreement with Defendant is in "total abrogation of the terms of the Plan regarding how much would be paid to non-participating providers." (*Id.* ¶ 21.)

A primary surgeon and assistant surgeon performed the Surgical Procedure on the Patient on or about October 23, 2020. (*Id.* ¶ 22.) *See also* ECF No. 10-1 at 13 n.6 (noting Plaintiff confirmed that the date of the Surgical Procedure listed in the Complaint was a "scrivener's

2

error").[1]  Plaintiff alleges that the doctors "reasonably determined" that CPT Codes beyond those explicitly agreed to on the June 8, 2020 call were "medically necessary to properly complete the Surgical Procedure." (*Id.* ¶ 23.)  Plaintiff billed Defendant $353,378 for the Surgery.  (*Id.* ¶ 26.)  Defendant paid Plaintiff only $14,632.02.  (*Id.* ¶ 39.)  Plaintiff alleges that these payments did not reimburse Plaintiff at the agreed-upon "in-network rate" for the billed CPT Codes.  (*Id.* ¶¶ 27-28.)  Defendant has refused to make additional payments to Plaintiff.  (*Id.* ¶ 29.)

### B. Procedural Background

Plaintiff sued Defendant on September 16, 2024, in the Superior Court of New Jersey, Law Division, Monmouth County.  (ECF No. 1-1.)  The Complaint asserted three common-law claims: breach of contract (Count One), promissory estoppel (Count Two), and negligent misrepresentation (Count Three).  *See generally id*.  On November 1, 2024, Defendant removed the case to this Court based on diversity jurisdiction.  (ECF No. 1 ¶¶ 16-21.)  On April 25, 2025, Defendant moved to dismiss the Complaint for failure to state a claim upon which relief can be granted.  (ECF No. 10.)

## II.   LEGAL STANDARD

When considering a Rule 12(b)(6) motion, courts "accept the factual allegations in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and assess whether the complaint and the exhibits attached to it 'contain enough facts to state a claim to relief that is plausible on its face.'"  *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023) (quoting *Watters v. Bd. of Sch. Dirs. of Scranton*, 975 F.3d 406, 412 (3d Cir. 2020)).  "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable

---

[1]  Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

inference that the defendant is liable for the misconduct alleged.'" *Clark v. Coupe*, 55 F.4th 167, 178 (3d Cir. 2022) (quoting *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019)). When assessing the factual allegations in a complaint, courts "disregard legal conclusions and recitals of the elements of a cause of action that are supported only by mere conclusory statements." *Wilson*, 57 F.4th at 140 (citing *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021)). The defendant bringing a Rule 12(b)(6) motion bears the burden of "showing that a complaint fails to state a claim." *In re Plavix Mktg., Sales Pracs. & Prod. Liab. Litig. (No. II)*, 974 F.3d 228, 231 (3d Cir. 2020) (citing *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016)).

### III. DISCUSSION

Defendant makes two arguments in support of its Motion to Dismiss. First, Defendant argues that the common-law claims asserted by Plaintiff are expressly preempted by the Employee Retirement Income Security Act of 1974 (ERISA). (ECF No. 10-1 at 14-23.) Second, Defendant argues that, even if ERISA does not preempt Plaintiff's claims, Plaintiff has failed to plausibly plead each of its three claims. (*Id.* at 23-29.) The Court addresses each argument in turn.

#### A. Extrinsic Documents

Before addressing Defendant's arguments, the Court notes that Defendant attached two exhibits to its Motion to Dismiss: (1) an exhibit containing excerpts from the "Summary Plan Description" (SPD) of the Patient's Plan, and (2) a June 4, 2020 Preauthorization Letter from Defendant to the Patient. *See* ECF No. 10-2. Defendant cites the SPD to show that the Patient's Plan is governed by ERISA and points to the Preauthorization Letter to suggest that Plaintiff performed the Surgical Procedure pursuant to a "gap exception" that did not promise payment and limited claims to those allowable under the Patient's Plan. (ECF No. 10-1 at 10 n.3, 12 n.5.)

In deciding a motion to dismiss, courts can consider "documents integral to or explicitly relied upon in the complaint" and "any undisputedly authentic document . . . if the plaintiff's

claims are based on the document." *In re Asbestos Prods. Liab. Litig. (No VI)*, 822 F.3d 125, 133 n.7 (3d Cir. 2016) (citation modified) (citations omitted).  The key question is "whether the claims in the complaint are 'based' on an extrinsic document and not merely whether the extrinsic document was explicitly cited in the complaint."  *Miller v. Brozen*, Civ. No. 23-2540, 2024 U.S. Dist. LEXIS 156337, at *14 (D.N.J. Aug. 30, 2024) (quoting *In re Burlington Coat Factory Sec. Lit.*, 114 F.3d 1410, 1426 (3d Cir. 1997)).

The Court is skeptical that these exhibits should be considered at this stage.  Plaintiff's claims are not based on the Plan, as Plaintiff alleges a separate agreement that is in "total abrogation of the terms of the Plan." (ECF No. 1-1 ¶ 21.)  *See Ass'n of N.J. Chiropractors, Inc. v. Data ISight, Inc.*, Civ. No. 19-21973, 2022 U.S. Dist. LEXIS 1825, at *8 (D.N.J. Jan. 5, 2022) (refusing to consider documentation about the patient's health insurance plan because the complaint did not plead that the plan governed the plaintiff's claims).  Moreover, the Preauthorization Letter is not referenced in Plaintiff's Complaint and is not alleged to form the basis of Plaintiff's claims.  Although Courts have at times considered such letters when attached to a motion to dismiss argued on similar grounds, those cases involved allegations directly related to the preauthorization letter.  *See Princeton Neurological Surg., P.C. v. Aetna, Inc.*, Civ. No. 22-01414, 2023 U.S. Dist. LEXIS 33542, at *8 (D.N.J. Feb. 28, 2023) (considering letter because the complaint alleged that the defendant approved of the surgical procedure via the letter); c*f. E. Coast Spine Joint & Sports Medicine v. Anthem Blue Cross Blue Shield*, Civ. No. 22-04841, 2023 U.S. Dist. LEXIS 73591, at *9 (D.N.J. Apr. 27, 2023) (declining to consider preauthorization letter in part because no allegations in the complaint were based on it).  Nonetheless, even if the Court were to consider these exhibits, the documents do not change the Court's conclusion regarding the denial of Defendant's Motion.

### B. ERISA Preemption

Defendant first argues that the Court should dismiss Plaintiff's Complaint because ERISA expressly preempts Plaintiff's three common-law claims. However, because the claims as pled do not "relate to" the Patient's Plan, the Court finds that they are not expressly preempted.

Congress designed ERISA to "protect . . . the interests of participants in employee benefit plans and their beneficiaries." *Am. Orthopedic & Sports Med. v. Indep. Blue Cross Blue Shield*, 890 F.3d 445, 449 (3d Cir. 2018) (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004)). To "supplant[] the patchwork of state law previously in place," Congress included "a broad express preemption provision." *Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*, 967 F.3d 218, 226 (3d Cir. 2020). Accordingly, ERISA "supersede[s] any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan." 29 U.S.C. § 1144(a) (emphasis added). For the purposes of ERISA preemption, state law encompasses common law causes of action. *Plastic Surgery Ctr., P.A.*, 967 F.3d at 226 (citing *Menkes v. Prud. Ins. Co. of Am.*, 762 F.3d 285, 294 (3d Cir. 2014)). State laws that "relate to" employee benefit plans are those that have "reference to" or a "connection with" that plan. *Id.* (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97 (1983)).

#### 1. Whether Plaintiff's claims make "reference to" Plaintiff's Plan

The Court first considers whether Plaintiff's claims make "reference to" Plaintiff's Plan. In relevant part, claims impermissibly make "reference to" an ERISA-governed plan when they are "premised on" that plan. *Id.* at 230 (citing *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 140 (1990)). Such claims include: "(a) claims predicated on the plan or plan administration, e.g., claims for benefits due under a plan . . . or where the plan is a critical factor in establishing liability . . . and (b) claims that involve construction of the plan . . . or require interpreting the plan's terms." *Id.* (citation modified).

The Court finds that Plaintiff's claims do not impermissibly make "reference to" the Patient's Plan. First, Plaintiff alleges that it had a "single case rate agreement" with Defendant to perform the Surgical Procedure for the in-network Plan rate for the specified CPT Codes and implied other CPT Codes, in abrogation of the Plan. (ECF No. 1-1 ¶¶ 16-18, 21.) In other words, it alleges a separate obligation for which Defendant incurred a contractual duty independent of the Plan and expressly disclaims any relationship with the Plan. *See Plastic Surgery Ctr., P.A. v. UnitedHealthcare Ins. Co.*, Civ. No. 24-8584, 2025 U.S. Dist. LEXIS 102450, at *9 (D.N.J. May 29, 2025) ("Since [the p]laintiff's claims are predicated on an independent contractual or quasi-contractual duty, and not on the Plan, § 514 does not preempt [the p]laintiff's state law claims."). Therefore, Plaintiff's claims as alleged are not predicated on the Plan or any administration of the Plan, nor is the Plan "a critical factor in establishing liability" for Plaintiff's claims. *Plastic Surgery Ctr., P.A.*, 967 F.3d at 230; *see also Plastic Surgery Ctr., P.A.*, 2025 U.S. Dist. LEXIS 102450, at *9 (collecting cases).

Defendant argues that Plaintiff's claims "relate to" the Patient's Plan because the Plan provides benefits for out-of-network providers, as confirmed by the Preauthorization Letter, and "under these circumstances," any obligation Defendant had to reimburse Plaintiff arose from the terms of the Plan. (ECF No. 10-1 at 16-17.) However, the Third Circuit acknowledged that "out-of-network providers do not have pre-existing contractual relationships with the insurer." *Plastic Surgery Ctr., P.A.*, 967 F.3d at 231. Indeed, the Complaint explicitly states that Plaintiff refused to perform the Surgical Procedure according to the terms of the Plan. (ECF No. 1-1 ¶ 14.) Rather, Plaintiff alleges that the separate single case agreement entered into through the June 8, 2020 conversation formed the source of Defendant's obligation. (*Id.* ¶¶ 16, 22.) *See also Plastic Surgery Ctr., P.A.*, 2025 U.S. Dist. LEXIS 102450, at *9-10 (finding the plaintiff's claims were not

predicated on the patient's ERISA plan even though the plan provided out-of-network benefits); *Samra Plastic & Reconstructive Surgery v. United Healthcare Ins. Co.*, 768 F. Supp. 3d 661, 671-72 (D.N.J. 2025) (finding that the patient's plan, which provided out-of-network benefits, was not the source of "whatever . . . liability may exist in this case"). Defendant's argument that the Preauthorization Letter proves the Plan controlled the agreement is unpersuasive as Plaintiff has not alleged that the parties' agreement was premised on the Preauthorization Letter. *See Plastic Surgery Ctr.*, 967 F.3d at 232-33 (finding a precertification letter with language referring to the patient's health benefits plan did not overcome the inference that plaintiff had a separate agreement with the defendant).

Second, the claims do not require interpretation of the Plan's terms. The alleged agreement at the heart of Plaintiff's claims mentions the Plan only for its in-network payment rates. Identifying these in-network rates requires only "cursory examination" of the in-network provider fee schedule, far from the "exacting, tedious, or duplicative inquiry that the preemption doctrine is intended to bar." *Plastic Surgery Ctr., P.A.*, 967 F.3d at 233-34. Accordingly, the claims do not require impermissible interpretation of the Plan's terms. *See also Plastic Surgery Ctr., P.A.*, 2025 U.S. Dist. LEXIS 102450, at *10-11 (finding the complaint's reference to the in-network rate did not require construction of the plan or interpretation of the plan's terms); *Plastic Surgery Ctr., P.A.*, Civ. No. 24-10033, 2025 U.S. Dist. LEXIS 197670, at *10-11 (D.N.J. Oct. 6, 2025) (same). As such, Plaintiff's claims do not make "reference to" the Plan such that the claims are preempted by ERISA.

        **2.     Whether Plaintiff's claims have a "connection with" Plaintiff's Plan**

The Court next turns to whether Plaintiff's claims have a "connection with" the Patient's Plan. Courts consider whether claims "(a) directly affect the relationship among the traditional ERISA entities—the employer, the plan and its fiduciaries, and the participants and beneficiaries

. . . (b) interfere with plan administration . . . or (c) undercut ERISA's stated purpose." *Plastic Surgery Ctr., P.A.*, 967 F.3d at 235 (citation modified). Taking these one-by-one, the Court first concludes that the alleged agreement does not affect the relationship among traditional ERISA entities, as the interests of out-of-network healthcare providers are not mediated by ERISA without an assignment of benefits. *Id.* at 236. Indeed, Plaintiff's claims "arise out of a relationship ERISA did not intend to govern at all." *Id.* Next, the claims do not interfere with plan administration because, as previously discussed, Plaintiff alleges that the claims arise from obligations separate and independent of the Plan. As such, resolving these claims would "merely result in a one-time payment of damages based on the specific agreement reached by the parties[.]" *Id.* at 237. Finally, the claims do not undercut ERISA's stated purpose, which is to protect plan participants and beneficiaries. *Id.* at 238. This goal "is not advanced by extending express preemption to out-of-network providers[.]" *Id.* Therefore, the claims as alleged lack a "connection with" the Patient's Plan. *See also Plastic Surgery Ctr., P.A.*, 2025 U.S. Dist. LEXIS 102450, at *11-12 (finding same after reviewing substantially similar allegations).

### 3.   *Defendant's Counterarguments*

Defendant points to *Peer Group for Plastic Surgery, PA v. United Healthcare Services* as a district court decision that "is on-point and instructive." (ECF No. 10-1 at 19.) In *Peer Group*, the court found that the out-of-network provider's state law claims were preempted by ERISA. Civ. No. 23-02073, 2024 U.S. Dist. LEXIS 56038 (D.N.J. Mar. 28, 2024). The court distinguished the case before it from the one before the Third Circuit in *Plastic Surgery Center, P.A. v. Aetna Life Insurance Company*. There, the Third Circuit denied the defendant insurer's motion to dismiss, in part because the healthcare provider had alleged an oral agreement separate from the plan. 967 F.3d at 233. In *Peer Group*, however, the plaintiff sought payment "pursuant to the [p]atients' . . . plans" according to agreements that were "reduced to writing" and that "explicitly reference[d] the

[p]lans." 2024 U.S. Dist. LEXIS 56038, at *2, *17.  In the instant case, as previously discussed, Plaintiff explicitly denies that the terms of the Patient's Plan apply and instead alleges a separate agreement that relies only on the Plan's in-network payment rates.  As such, *Peer Group* is inapposite.

A more apt comparison is with *Plastic Surgery Center P.A. v. UnitedHealthcare Insurance Company*.  An out-of-network provider sued an insurance company for breach of contract, promissory estoppel and negligent misrepresentation.  2025 U.S. Dist. LEXIS 102450, at *3.  The plaintiff "refused to perform the [s]urgical [p]rocedure because the [p]lan's non-participating rate did not provide sufficient compensation" to justify the surgeon's performance.  *Id.* at *2.  As such, "the parties 'entered into a single case rate agreement' . . . where [the p]laintiff would be paid the in-network rate for preapproved [CPT] codes that were applicable to the [s]urgical [p]rocedure, and in exchange, [the p]laintiff forfeited its right to balance bill the [p]atient."  *Id.* at *2-3.  Similarly, here, the Complaint plainly states that Plaintiff "refused to perform the Surgical Procedure based on the terms of the Plan" and alleged that, under the Plan, "non-participating providers . . . are entitled to be paid at a rate significantly lower than participating providers." (ECF No. 1-1 ¶¶ 12, 20.)  The court in the *UnitedHealthcare* case found that ERISA did not preempt the alleged claims because they had no impermissible "reference to" or "connection with" the patient's health benefits plan.  For these same reasons, and for the reasons already discussed, this Court also declines to find express preemption of the alleged state law claims.  *See also Premier Orthopaedic Assocs. of S. N.J., LLC v. Anthem Blue Cross Blue Shield*, 675 F. Supp. 3d 487, 493 (D.N.J. 2023) (finding claims not preempted by ERISA when out-of-network provider pled that "preapproval of the patient's surgery created an independent obligation" apart from any ERISA-governed plan); *Gotham City Orthopedics, LLC v. United Healthcare Ins. Co.*, Civ. No.

10

21-11313, 2022 U.S. Dist. LEXIS 6382, at *9-10 (D.N.J. Jan. 12, 2022) (finding claims not preempted by ERISA when "[t]here [was] nothing in the [a]mended [c]omplaint to suggest that [plaintiff] agreed to incorporate the terms of [defendant's] agreements with patients").

### C. Breach of Contract

The Court next addresses the sufficiency of Plaintiff's state law claims as pled. To assert a claim for breach of contract, a plaintiff must demonstrate: (1) the existence of a contract between the parties; (2) a breach of that contract; (3) resulting damages; and (4) that the claimant fulfilled its own contractual obligations. *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007). For purposes of a motion to dismiss, it is sufficient to allege "'when the contract was entered, the parties to the contract, the essential terms of the contract, how [defendant] breached the contract,' and plaintiff's performance of their obligations." *Samra Plastic & Reconstructive Surgery v. Cigna Health & Life Ins. Co.*, Civ. No. 23-21810, 2024 U.S. Dist. LEXIS 133185, at *15-16 (D.N.J. July 29, 2024) (quoting *W.H.P.M., Inc. v. Immunostics, Inc.*, Civ. No. 18-16031, 2020 U.S. Dist. LEXIS 10429, at *11 (D.N.J. Jan. 22, 2020)).

The Complaint's allegations sufficiently plead the existence of a binding contract, as well as the other elements of a breach of contract claim. Plaintiff alleges that, after a period of negotiation, it entered into an oral agreement with Defendant via a phone call on June 8, 2020. (ECF No. 1-1 ¶ 16.) In exchange for performance of the Surgical Procedure and agreeing to forego balance billing the Patient, Defendant agreed to pay Plaintiff at the in-network rates for specific CPT Codes as well as those needed to competently complete the Surgical Procedure. (*Id.* ¶¶ 13-18.) Plaintiff alleges that it performed its duties under the contract, that Defendant breached the contract when it paid less than the in-network rate, and that Plaintiff suffered damages in the amount of the unpaid balance. (*Id.* ¶¶ 33-35.)

Although Defendant argues that no contract was formed because the parties did not agree on a "definite price" for the Surgical Procedure, courts have found that alleged agreements to pay an out-of-network provider at the in-network rate sufficiently pled the existence of a contract. *See, e.g.*, *Plastic Surgery Ctr., P.A.*, 2025 U.S. Dist. LEXIS 102450, at *15 ("At the pleading stage . . . a plaintiff's reference to the in-network rate as the compensation for medical procedures based on CPT Codes suffices as a certain term of the agreement."); *Plastic Surgery Ctr., P.A. v. Cigna Health & Life Ins. Co.*, Civ. No. 24-10217, 2025 U.S. Dist. LEXIS 129132, at *20 (D.N.J. July 8, 2025) ("TPSC plausibly alleges that the parties agreed to the 'in-network rate,' which . . . can presumably be established through a cursory review of [the patient's] plan."); *cf. Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*, Civ. No. 18-3381, 967 F.3d 218, 231-32 (3d Cir. 2020) (accepting at the motion to dismiss stage allegations of an agreement where insurer agreed to pay a "reasonable amount"); *Gotham City Orthopedics*, 2022 U.S. Dist. LEXIS 6382, at *11-13 (upholding breach of contract claim where the promise was to reimburse the plaintiff at "out-of-network rates").

Moreover, "an agreement lacking definiteness of price . . . is not unenforceable if the parties specify a practicable method by which they can determine the amount." *Samra Plastic & Reconstructive Surgery v. Cigna Health & Life Ins. Co.*, Civ. No. 23-22521, 2024 U.S. Dist. LEXIS 125754, at *16 (D.N.J. July 17, 2024) (quoting *Baer v. Chase*, 392 F.3d 609, 619 (3d Cir. 2004)). Here, when drawing all inferences in favor of Plaintiff, an agreement to pay in-network rates is a practicable method to determine the amount to be paid for the Surgical Procedure. Although Defendants argue that the ERISA Plan and the Preauthorization Letter "made abundantly clear" that a specific payment was not guaranteed, (ECF No. 10-1 at 24), Plaintiff alleges that the agreement occurred on June 8, 2020, four days after the date of the Preauthorization Letter. (ECF

12

No. 1-1 ¶ 16.) Accordingly, Plaintiff's allegation that Defendant agreed to pay the in-network rate is sufficiently definite.

Taken together, and drawing all inferences in favor of Plaintiff, Defendant's arguments are unavailing at the pleading stage. Plaintiff has stated a claim for breach of contract sufficient to survive a motion to dismiss.

### D.    Promissory Estoppel

To state a claim for promissory estoppel under New Jersey law, Plaintiff must allege "(1) a clear and definite promise; (2) made with the expectation that the promisee will rely on it; (3) reasonable reliance; and (4) definite and substantial detriment." *Goldfarb v. Solimine*, 245 A.3d 570, 577 (N.J. 2021) (citing and quoting *Toll Bros., Inc. v. Bd. of Chosen Freeholders of Burlington*, 944 A.2d 1, 19 (N.J. 2008)). The Court finds that Plaintiff's allegations are sufficient for this claim to proceed. Plaintiff alleges that Defendant "represented . . . and promised" that it would pay Plaintiff "for the Surgical Procedure at the in-network rate." (ECF No. 1-1 ¶ 37.) Plaintiff alleges it relied on this representation and suffered a detriment by not receiving the allegedly agreed-upon payment. (*Id.* ¶¶ 38-42.)

Defendant argues that this claim should fail because the allegedly agreed-upon payment term—the "in-network rate"—lacks "sufficient definition." (ECF No. 10-1 at 26-27.) *See also Malaker Corp. S'holders Protective Comm. v. First Jersey Nat'l Bank*, 163 N.J. Super. 463, 479 (App. Div. 1978). However, the alleged promise to pay at the in-network rate is clear and definite enough to sustain this claim at the pleading stage. *See also Rabinowitz v. Cigna Health & Life Ins.*, Civ. No. 24-9492, 2025 U.S. Dist. LEXIS 201008, at *11 (D.N.J. Oct. 10, 2025) (finding the complaint alleged a cognizable promissory estoppel claim where the promise included payment for "reimbursement at either the out-of-network billed rate or, 'alternatively, at an agreed upon rate'") (citation modified). Moreover, "in considering whether a promise was clear and definite

13

for a promissory estoppel claim, New Jersey courts 'have tended to relax strict adherence . . . in favor of a more equitable approach.'" *Plastic Surgery Ctr., P.A.*, 2025 U.S. Dist. LEXIS 102450, at *17 (citation omitted). Defendant also argues that Plaintiff unreasonably relied on verbal representations despite warnings in the Plan and Preauthorization Letter cautioning that "oral representations should not be relied on" and that Defendant did not guarantee payment. (ECF No. 10-1 at 27-28.) For the same reasons as previously discussed, Defendant's argument is unavailing at the pleading stage and can be re-asserted following discovery. Accordingly, Plaintiff has adequately alleged a claim for promissory estoppel.

      E.      **Negligent Misrepresentation**

To state a claim for negligent misrepresentation, Plaintiff must allege Defendant negligently made an incorrect statement that Plaintiff justifiably relied on, resulting in economic loss. *Broad St. Surgical Ctr., LLC v. UnitedHealth Grp., Inc.*, Civ. No. 11-2775, 2012 U.S. Dist. LEXIS 30466, at *31 (D.N.J. Mar. 6, 2012) (citation omitted). Plaintiff also must plead "facts for a court to find a basis for the imposition of a duty between the parties." *Id*. at *31-32.

Defendant argues that Plaintiff failed to allege facts showing that any statement by Defendant's representative was "incorrect," that Plaintiff should not have relied on the representative's statements because of warnings in Plan materials and a disclaimer in the Preauthorization Letter, and that Defendant owed no duty to Plaintiff. (ECF No. 10-1 at 28-29.) However, Plaintiff alleges that Defendant falsely represented that it would pay Plaintiff the in-network rate for the Surgical Procedure, that Plaintiff "reasonably and justifiably relied upon Cigna's misrepresentations to its detriment," and that Defendant "owed a duty to TPSC not to make false representations." (*Id.* ¶¶ 45, 48-49.) At this stage of the proceedings, Plaintiff's allegations are sufficient to sustain this claim. *See Gotham City Orthopedics*, 2022 U.S. Dist.

LEXIS 6382, at *15 (finding statement that the plaintiff was entitled to reimbursement at "out-of-network rates" sufficient to state a negligent misrepresentation claim).

Defendant's reliance on the New Jersey Appellate Division's decision in *Princeton Neurological Surgery, P.C. v. Horizon Blue Cross Blue Shield of N.J.* is misplaced. The Appellate Division reviewed a lower court's grant of summary judgment, rather than a grant of a motion to dismiss. Civ. No. A-0486-22, 2024 N.J. Super. Unpub. LEXIS 78, at *19 (N.J. Super. Ct. App. Div. Jan. 17, 2024). The Appellate Division did not consider whether the plaintiff sufficiently *pled* an agreement distinct from the patients' health benefits plans; rather, it referred to *the record* in issuing its decision. *Id.* at *15 ("Here, the record reveals no express or implied agreement, let alone a promise that cross-referenced [the patients'] ERISA plans as the parties had in *Plastic Surgery*."). Accordingly, it found that the parties did not have a contract separate from the patients' health benefits plans and that, therefore, the defendant owed no duty to the plaintiff. *Id.* at *18. Indeed, merits-based arguments regarding whether the statement at the center of a negligent misrepresentation claim was false or if reliance on it was justified are more appropriate at summary judgment. *See, e.g.*, *Plastic Surgery Ctr. v. Oxford Health Ins., Inc.*, Civ. No. 18-2608, 2019 U.S. Dist. LEXIS 169146, at *7 (D.N.J. Sept. 30, 2019) (denying motion to dismiss negligent misrepresentation claim because it was "not appropriate to assess the veracity of . . . factual allegations at this stage"); *Prestige Cap. Fin. LLC v. CVS Pharmacy, Inc.*, Civ. No. 22-735, 2022 U.S. Dist. LEXIS 230829, at *8 (D.N.J. Dec. 22, 2022) (denying motion to dismiss negligent misrepresentation claim because the claim's validity depended on factual issues "unsuitable for resolution on a motion to dismiss"); *see also Caspersen as Tr. for Samuel M.W. Caspersen Dynasty Tr. v. Oring*, 441 F. Supp. 3d 23, 41 (D.N.J. 2020) ("[R]easonableness [of a party's reliance] is a factual issue . . . and ill-suited to resolution on a motion to dismiss.").

## IV. CONCLUSION

For the foregoing reasons, and other good cause shown, Defendant's Motion to Dismiss (ECF No. 10) is **DENIED**. An appropriate Order follows.

Dated: October 22, 2025

*[signature]*
**GEORGETTE CASTNER**
**UNITED STATES DISTRICT JUDGE**